IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-03005-NYW-NRN

SHALZ CONSTRUCTION LLC, a Colorado limited liability company; and
BRADLEY SHALZ, individually,

Plaintiffs,

v.

GREAT LAKES INSURANCE, SE f/k/a GREAT LAKES REINSURANCE (UK) PLC, a foreign corporation,

Defendant.

---

## ORDER ON
## PLAINTIFFS' MOTION FOR LEAVE TO AMEND TO SEEK EXEMPLARY DAMAGES
## (ECF No. 94)

---

**N. REID NEUREITER**
**United States Magistrate Judge**

This case is before the Court on Plaintiffs Shalz Construction, LLC and Bradley Shalz's (collectively, "Plaintiffs" or "Shalz") Motion for Leave to Amend to Seek Exemplary Damages ("Motion to Amend"), filed February 5, 2025. ECF No. 94. The motion was referred to me by Judge Nina Y. Wang on February 6, 2025. ECF No. 95. Defendant Great Lakes Insurance SE ("Great Lakes") filed its response in opposition on February 21, 2025. ECF No. 102. The Court heard argument on March 18, 2025. *See* ECF No. 104. Having considered the arguments of the Parties, the underlying facts and allegations, the submitted evidence, and the relevant caselaw, Plaintiffs' Motion to Amend will be **GRANTED**.

**I.   BACKGROUND**

This case has a complicated history. It arises from third-party claims that Great Lakes asserted against Shalz in an earlier lawsuit, *Pinon Sun Condominium Association, Inc. v. Great Lakes Reinsurance (UK) SE*, Case No. 17-cv-01595-CMA-NRN (D. Colo.) (the "Underlying Action"). In the Underlying Action, Great Lakes was sued by its insured, Pinon Sun Condominium Association, Inc. ("Pinon Sun"), for bad faith breach of an insurance contract following a hailstorm. Shalz had been hired to repair the property. In response to the lawsuit, Great Lakes filed counterclaims and asserted third-party claims against Shalz (and others) for fraud, civil conspiracy, civil theft, and violating state and federal racketeering laws (COCCA and RICO). Great Lakes alleged that Pinon Sun, through its public adjuster, Claim Solutions LLC ("Claims Solutions"), conspired with Shalz to commit insurance fraud by submitting estimates for roofing repairs in excess of the actual damage, and then dividing the excess proceeds amongst themselves.

Judge Christine M. Arguello dismissed the racketeering claims against Plaintiffs under Rule 12(b)(6) and later entered summary judgment in Shalz's favor on all of Great Lakes' remaining claims. Judge Arguello found that Great Lakes had relied on its own contractors' estimates in evaluating Pinon Sun's claim rather than any information provided by Shalz.

Shalz then filed this lawsuit against Great Lakes for malicious prosecution. Plaintiffs allege that Great Lakes knew or should have known that its fraud, conspiracy and racketeering claims were not grounded in fact or law and were only brought to gain

a tactical advantage in defending the claims originally brought by Pinon Sun. *See generally* ECF No. 1.

Plaintiffs claim actual out-of-pocket damages of approximately $200,000 reflecting their fees and costs in having to defend the underlying lawsuit. Plaintiffs are also seeking damages for lost profits, business opportunities, and damage to their reputation as a result of having been falsely accused of insurance fraud, which they estimate at approximately $3 million. *See* ECF No. 39 at 4–5 (Scheduling Order).

Great Lakes was originally represented in this lawsuit by attorneys from the law firm of Jachimiak Peterson Kummer, LLC, who also represented Great Lakes in the Underlying Action. Shalz moved to disqualify the firm from representing Great Lakes after Great Lakes raised advice of counsel as a defense. *See* ECF No. 56. Great Lakes confessed the motion, ECF No. 61, and new counsel entered on its behalf in April of 2024. *See* ECF Nos. 62, 63, & 69.

## II.   **PLAINTIFFS' MOTION TO AMEND TO SEEK EXEMPLARY DAMAGES**

Shalz asserts that there is extensive evidence that will confirm that Great Lakes acted with "fraud, malice" or "wilful and wanton conduct" in bringing the conspiracy and fraud claims against Shalz, which would therefore justify a jury awarding exemplary (punitive) damages against Great Lakes. Per Shalz, this would justify amendment of the scheduling order and the complaint to allow Shalz to claim exemplary damages at trial. ECF No. 94.

## III.   **LEGAL STANDARD FOR ALLOWING EXEMPLARY DAMAGES UNDER COLORADO LAW**

A claim for exemplary damages under Colorado law is appropriate in all civil actions in which damages are assessed by a jury for a wrong done to a person or to

personal or real property, "where the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct." Colo. Rev. Stat. § 13–21–102(1)(a). Willful and wanton conduct is defined as "conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff." *Id.* § 13–21–102(1)(b). The statutory requirements are met "[w]here the defendant is conscious of his conduct and the existing conditions and knew or should have known that injury would result." *Coors v. Sec. Life of Denver Ins. Co.*, 112 P.3d 59, 66 (Colo. 2005). "Simple negligence cannot support such an award"; rather, "where a defendant is conscious of both its conduct and the existing conditions, and knew or should have known that injury would result, the requirements of section 13-21-102 are met." *Blood v. Qwest Servs. Corp.*, 224 P.3d 301, 314 (Colo. App. 2009) (citations omitted). Conduct is willful and wanton if it is "a dangerous course of action" that is consciously chosen "with knowledge of facts, which to a reasonable mind creates a strong probability that injury to others will result." *Steeves v. Smiley*, 354 P.2d 1011, 1014 (Colo. 1960).

Exemplary damages are intended "to punish and penalize [a defendant] for certain wrongful and aggravated conduct and to serve as a warning to other possible offenders." *Beebe v. Pierce*, 521 P.2d 1263, 1264 (1974) (citation omitted). In diversity cases such as this, a motion to amend a complaint to seek exemplary damages is governed by Colorado state law. *Klein v. Grynberg*, 44 F.3d 1497, 1503 (10th Cir. 1995). Under Colorado law, a claim which seeks exemplary damages may not be included in any initial claim for relief and may only added by amendment to the

4

pleadings "after the exchange of initial disclosures . . . and the plaintiff establishes prima facie proof of a triable issue." Colo. Rev. Stat. § 13–21–102(1.5)(a).

Prima facie proof of a triable issue requires "a showing of reasonable likelihood that the issue will ultimately be submitted to the jury for resolution." *Stamp v. Vail*, 172 P.3d 437, 449 (Colo. 2007) (quoting *Leidholt v. Dist. Court*, 619 P.2d 768, 771 n.3 (Colo. 1980)). Such proof is established through discovery or evidentiary means. *Id.* It is ultimately the jury who will decide the merits of an exemplary damages claim. *See id.*; *E&S Liquors, Inc. v. U.S. Fidelity & Guar. Co.*, No. 08-cv-01694-WYD-KLM, 2009 WL 837656, at *2 (D. Colo. Mar. 26, 2009). However, the "question of whether the plaintiff has established sufficient proof to add a claim for exemplary damages lies within the sound discretion of the trial court." *Stamp*, 172 P.3d at 449 (citation omitted). At the amendment stage in the litigation, a plaintiff should be granted "some leeway in establishing his prima facie case." *Leidholt*, 619 P.2d at 769. As the Colorado Supreme Court has emphasized, "[t]his is a lenient standard. A plaintiff should have an opportunity to test the merits of any claim for relief that is supported by the underlying facts of the case." *Stamp*, 172 P.3d at 450 (citation omitted); *see also RCHFU, LLC v. Marriott Vacations Worldwide Corp.*, No. 16-cv-1301-PAB-GPG, 2018 WL 3055772, at *4 (D. Colo. May 10, 2018) ("At this stage of the litigation, the Court is only concerned with whether the evidence, when viewed in the light most favorable to Plaintiffs, is sufficient to make out a prima facie case of willful and wanton behavior for the purpose of allowing Plaintiffs to amend their Complaint to include exemplary damages, not whether such evidence is sufficient to defeat a motion for summary judgment or to result in a jury verdict in Plaintiffs' favor."(citation omitted)).

5

The words, "wrong done to the person, or to personal or real property," found in Colo. Rev. Stat. § 13-21-102, "were unquestionably intended to apply to any kind of tort." *Kohl v. Graham*, 202 F. Supp. 895, 896 (D. Colo. 1962) (allowing exemplary damages in connection with loss of consortium claim); *see also Borquez v. Robert C. Ozer*, 923 P.2d 166 (Colo. App. 1995) (invasion of privacy is a "wrong done to the person" and exemplary damages are properly awarded either for wrongful discharge or invasion of privacy) *aff'd in part, rev'd in par on other grounds*, 940 P.3d 371 (Colo. 1997); *Double Oak Constr., L.L.C. v. Cornerstone Dev. Int'l, L.L.C.*, 97 P.3d 140 (Colo. App. 2003) (holding that exemplary damages may be awarded on civil conspiracy claim, an independent tort that seeks actual damages). Indeed, at least one Colorado court has awarded exemplary damages in a claim for malicious prosecution. *See Schenck v. Minolta Office Systems, Inc.*, 873 P.2d 18 (Colo. App. 1993) (describing lawsuit involving attorney seeking to enforce attorney's lien in malicious prosecution case where trial court had awarded a portion of exemplary damages award to the state of Colorado).

IV.  **ANALYSIS**

   a. **Plaintiffs' Evidence Supporting Award of Exemplary Damages**

The foundation for Plaintiffs' prima facie case justifying an award of punitive damages are the conclusions by judicial officers in the Underlying Case that there was no evidence supporting many of the claims and assertions made by Great Lakes. For example, in recommending dismissal of Great Lakes' RICO and COCCA claims against Shalz, Magistrate Judge Michael J. Watanabe wrote,

> The Court finds that Defendants' allegation that Shalz and Solutions have been engaged in an ongoing scheme to attempt to obtain excessive

6

> insurance proceeds is speculative and does not meet Rule 9(b)'s pleading standards. Defendants offer no explanation or evidence as to why they believe this ongoing relationship exists. The Third-Party Complaints describe Movants' conduct only relating to this single claim process. While the Court acknowledges that allegations of fraud may be based on information and belief when the facts in question are peculiarly within the opposing party's knowledge, *see Scheidt v. Klein*, 956 F.2d 963, 967 (10th Cir. 1992), in *Scheidt*, the Tenth Circuit made it clear that this is only proper when the complaint sets forth the factual basis for the plaintiff's belief. *Id*. Here, Defendants offer no such factual basis, only speculation and conclusory allegations. Indeed, they admit in their Responses that "[t]he claim underlying this action has been [Defendants'] only interaction with the Third-Party Defendants." Without more, Defendants cannot maintain their COCCA claims.

Underlying Case (17-cv-01595-CMA-NRN), ECF No. 167 at 13–14 (D. Colo. June 29, 2018), *recommendation adopted without objection*, ECF No. 174 (D. Colo. July 18, 2018). Thus, despite launching serious claims of some kind of civil criminal conspiracy against Shalz, Great Lakes' allegations were "speculative" and Great Lakes could offer "no explanation or evidence" of the existence of such a scheme.

Then, at the summary judgment stage, with respect to the claims against Shalz that did survive the motion to dismiss, Judge Arguello explained that Great Lakes could offer no evidence at all that it had been harmed by Shalz's alleged fraudulent activity, in part because Great Lakes had relied on its own adjuster's estimates of the damage and never paid more than an amount that Great Lakes conceded was undisputedly owed to Pinon Sun, the insured. Thus, Great Lakes **never relied** on any alleged false statements by Shalz, and Great Lakes **never** suffered any damage from Shalz's alleged exaggerated estimates. Reliance and damage are essential elements of a claim for fraud:

> Great Lakes does not set forth any specific facts regarding how it relied on Pinon Sun's, Claim Solutions', and/or Shalz's representations to determine the amount of its ACV payment. In fact, Great Lakes does just the opposite

7

> in its filings. It repeatedly states that it **relied entirely on its own contractor**'s estimates to determine the value of the ACV payments it owed Pinon Sun. *See, e.g.*, (Doc. # 240 at 5, 18) ("The payment of the uncontested [ACVs] in September 2016 was based upon estimates prepared by JBC," which was retained by the Insurers' claim adjusting agent.) And in its Response to Shalz's Motion for Summary Judgment, Great Lakes concedes that it did not rely on information provided by Shalz, Pinon Sun, or Claim Solutions, but rather, based its payments wholly on "estimates from the Insurers' preferred contractor [and] their own retained experts." (Doc. # 204 at 7; Doc. # 229 at 6.) Given that Great Lakes does not assert **any** specific facts to support its bare, conclusory allegation that it "did, in fact, rely on the false representations" made by Pinon Sun, Claim Solutions, and/or Shalz, the Court concludes that there is no genuine issue for trial on the fifth element of Great Lakes' common law fraud and misrepresentation claim.

*Id.*, ECF No. 288 at 10–11 (D. Colo. September 27, 2019).

Thus, based on the findings by judicial officers in the underlying case, Great Lakes brought claims against Shalz for which Great Lakes could not even muster any non-speculative allegations (RICO and COCCA), or utterly failed to provide any evidence of, for example, reliance or damages (fraud claim and civil theft).

But Plaintiffs also argues and provides evidence that Great Lakes knew (or strongly suspected) from the beginning that it lacked a factual or legal basis for bringing a lawsuit against Shalz, and instead was doing it for the express purposes of inappropriately dragging Shalz into the lawsuit and pressuring it to contribute some money towards Pinon Sun's cost of repairs. This documentation comes primarily from correspondence between Great Lakes and Mark Davis, its litigation counsel in the Underlying Case, which was produced after Great Lakes asserted "advice of counsel" as a defense and, as a consequence, waived the attorney-client privilege.

For example, in providing a draft of the Answer and Counterclaims to the insureds' Complaint, Mr. Davis wrote:

8

> I am attaching a non proofed draft of an Answer with Counterclaims and Third Party claims alleging the various claims that we have filed on behalf of Great Lakes with success in other claims. This is a fairly aggressive tact [sic] to take. As in previous cases it is primarily designed to rise [sic] concern about the process with the HOA Board and to seek broad discovery on the [Public Adjuster's] business practices. We have not [sic] forfeiture clause in the policy and without that there is little chance of obtaining disgorgement of the past paid amounts. **We have not yet paid anything past our uncontested amounts so it will be hard to prove any other damages caused by the fraud.** . . . Note, it is a close question as to whether or not we can assert the Third Party claims against the PA and contractor as they are not technically "liable to us for any portion of the Plaintiff claim against us" and we may draw a motion.

ECF No. 94-4 (Pls.' Ex. C) (emphasis added). This email was sent to Steven Sensibar, Great Lakes' client representative in London.

On December 19, 2018, after the Underlying Case was underway, Mr. Davis reiterated in an email to Mr. Sensibar that "I am trying to drive a wedge between the HOA and Benglen and get Benglen to throw in the funds and then also have them use the funds offered by Shalz to get the case settled." ECF No. 94-5 (Pls.' Ex. D).

On October 15, 2019, after summary judgment was entered in Shalz's favor, Mr. Sensibar asked Mr. Davis for his thoughts about the opinion and any bases for appeal. Counsel responded with a confirmation that there was never any basis for the fraud claim to begin with—the plan was just to keep Shalz in the case to exert settlement pressure:

> I do not believe that we would have a substantial chance of overturning the decision on the fraud, theft and conspiracy claims on appeal. **As Great Lakes did not pay anything as a result of the fraud, we really cannot show either reliance or damages.** . . . **We tried to keep the third parties in the case in order to have them contribute to settlement.** It almost worked as at one time Shalz had offered up to $100,000 to settle.

ECF No. 94-6 (Pls.' Ex. E) (emphasis added).

9

After winning on summary judgment, Shalz was finally able to submit a bill of costs to defray some of the expenses of having to defend the baseless lawsuit. Shalz sought reimbursement of approximately $8,000. Great Lakes' own counsel recognized that, at the very least, the Clerk would likely award $932.90, which was the expense of a deposition cited in the successful summary judgment motion. ECF No. 94-7 (Pls.' Ex. F). Rather than negotiate a reasonable cost figure, Mr. Sensibar reacted with a petulant and malicious note to his counsel, offering up only $50:

> My preference here is to make them prove up every penny they are claiming. I don't mind you billing us what it takes to resist this – I would rather pay you than them. If you want to make an offer to them, I would consider $50.00. **I realize this won't achieve a settlement, but it feels good.**

*Id.* (emphasis added). When the $50 offer forwarded to Great Lakes, Mr. Sensibar responded, "I'm trying not to laugh. Trying but not succeeding." ECF No. 103-1 (Pls.' Ex. J). Shalz was ultimately awarded the vast majority of the costs sought.

In sum, Plaintiffs have brought forward prima facie evidence that Great Lakes sued Shalz for fraud, civil theft, and violations of the RICO and COCCA statutes with the knowledge that there was little to no support for those claims because Great Lakes had never relied on or been damaged by the alleged conduct. There is also evidence, supported by the conduct on the bill of costs, that Great Lakes pursued this course of conduct not for the purpose of resolving a good faith dispute but maliciously and with evil intent; first, for the purpose of extracting an unjustified settlement, and later for the purpose of gleefully inflicting harm on Shalz. The Court therefore finds that Plaintiffs have made the necessary prima facie case that would justify an award of exemplary damages under Colorado law.

### b. Great Lakes' Objections to the Proposed Amendment are Without Merit

Great Lakes makes a number of objections to allowing Plaintiffs to seek exemplary damages. None of these objections have merit.

First, Great Lakes argues that it cannot be held liable for exemplary damages based on the conduct of a non-managerial employee or agent absent a showing that the corporate defendant authorized or approved the act for which exemplary damages are claimed, that it approved of or participated in the wrong of its agent, or that it failed to exercise proper care in selecting its servants. ECF No. 102 at 5 (citing *Holland Furnace Co. v. Robson*, 402 P.3d 628 (Colo. 1965) (modifying a judgment to remove the exemplary damages award where the record was silent as to whether a furnace company authorized or ratified fraudulent conduct by its employees)). This objection is baseless. Although much of the evidence supporting the claim for exemplary damages is based on the conduct of Great Lakes' counsel in the Underlying Case, it is apparent from the correspondence that Mr. Davis sought authorization and approval from Great Lakes' representative, Mr. Sensibar, before taking any of the disputed actions. Thus, Mr. Davis' acts were explicitly authorized and ratified by Great Lakes.

Second, Great Lakes argues that Plaintiffs have waited too long to move to amend the Scheduling Order to seek exemplary damages. *See* ECF No. 102 at 3-4 ("Shalz's motion comes 2 years, 4 months, and 4 days after the deadline to amend pleadings expired, 11 months and 3 weeks after Shalz deposed Mark Davis which—according to Shalz—elicited "extensive evidence" supporting a claim for exemplary damages against Great Lakes, 4 months, 4 weeks and 2 days after Shalz sued Davis

11

and his law firm [in state court] for willful and wonton conduct and malice."). Again, the Court disagrees.

Under Fed. R. Civ. P. 15(a), a party may amend its pleading once as a matter of course at any time before a responsive pleading is served. Once a responsive pleading is filed, a party may amend its complaint only by leave of the court or by written consent of the adverse party. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). The grant or denial of leave is committed to the discretion of the district court. *See Duncan v. Manager, Dep't of Safety, City and Cnty. of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005). The Court must heed Rule 15's mandate that leave is to be "freely given when justice so requires." Fed. R. Civ. P. 15(a); *see also Foman*, 371 U.S. at 182; *Duncan*, 397 F.3d at 1315. "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman*, 371 U.S. at 182. Leave to amend should be refused "only on a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Duncan*, 397 F.3d at 1315; *see also Foman*, 371 U.S. at 182.

In this instance, Plaintiffs' motion was filed after the deadline to amend pleadings. Therefore, Plaintiffs are necessarily asking for a modification of the Scheduling Order to allow for the amended complaint, which includes the request for exemplary damages. Modifying a scheduling order requires good cause. *See Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014) (explaining that once the scheduling order deadline has passed, "a party seeking leave to amend must

demonstrate (1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard").

In practice, this good cause standard requires the movant to show the scheduling deadlines could not be met despite the movant's diligent efforts. Rule 16's good cause requirement may be satisfied, for example, if a plaintiff learns new information through discovery or if the underlying law has changed. If the plaintiff generally knew of the underlying conduct but simply failed to raise the claim, however, good cause is not present. *Id.*

The Rule 15 and Rule 16 standards do apply to a movant's untimely request to amend pleadings to add a claim for exemplary damages under Colorado law. *See, e.g., Fiechtner v. Amer. Family Mut. Ins. Co.*, No. 09-cv-02681-REB-MEH, 2010 WL 5185490, at *3 (D. Colo. Oct. 19, 2010); *Alarid v. Biomet, Inc.*, No. 14-cv-2667-REB-NYW, 2016 WL 309053, at *2 (D. Colo. Jan. 26, 2016); *Martin v. Amer. Family Mut. Ins. Co.*, No. 05-cv-00960-ZLW-BNB, 2007 WL 1159945, at *1 (D. Colo. Apr. 17, 2007). As a practical matter, this means that if a plaintiff has diligently sought to develop the evidence sufficient to establish a prima facie case for exemplary damages, learns new information through discovery, and has not unduly delayed in moving to amend once that evidence is collected, then good cause for the amendment is established. *See Schimek v. Owners Ins. Co.*, No. 16-cv-02197-PAB-STV, 2017 WL 3621833 (D. Colo. August 23, 2017) (finding good cause to amend to add request for exemplary damages where plaintiff obtained supporting evidence in the course of discovery); *Kassinove v. McClendon*, 16-cv-00565-WYD-KLM, 2017 WL 4277184 (D. Colo. Sept. 27, 2017) (denying leave to amend to add request for exemplary damages where plaintiff did not

submit any evidence in support that was obtained through discovery and nothing would have prevented plaintiff from filing within the deadline); *Espinoza v. Am. Fam. Mut. Ins. Co.*, No. 08-cv-00709-REB-MEH, 2008 WL 4059851, at *2 (D. Colo. Aug. 29, 2008) (granting leave to amend to add claim for exemplary damages, noting that it is expected that the "discovery process" will provide the evidence necessary to establish the prima facie case).

The Rule 16(b)(4) standard requires the movant to show that, despite the movant's diligent efforts, he or she could not meet the scheduling deadline. *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1247 (10th Cir. 2015); *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001); *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 n.4 (10th Cir. 2006). To prove diligence, a plaintiff must provide an adequate explanation for any delay. *Minter*, 451 F.3d at 1205 n.4. If a plaintiff learns new information through discovery, good cause to amend may be established under Rule 16(b)(4). *Birch*, 812 F.3d at 1247; *see also Riggs v. Johnson*, No. 09-cv-01226-WYD-KLM, 2010 WL 1957110, at *3 (D. Colo. Apr. 27, 2010) (granting a motion for joinder six months after the scheduling order deadline); *Fiechtner*, 2010 WL 5185490, at *3 (permitting amendment of the scheduling order and the pleadings to add an exemplary damages claim five months after deadline).

The Court believes that Plaintiffs have shown good cause for amending the Scheduling Order and have demonstrated appropriate diligence in seeking evidence in support of their claim for exemplary damages. The Scheduling Conference in this case was held on July 27, 2023. *See* ECF No. 38. The deadline for amendment of pleadings

was 45 days from the date of the Scheduling Conference—or September 11, 2023. *Id.* at 1.

Great Lakes concedes that some of the documents cited by Plaintiffs in support of its exemplary damages claim were disclosed on September 1, 2023, and others in January 2024. ECF No. 102 at 7. Thus, it would have been nearly impossible for Plaintiffs move to amend within the deadline set in the Scheduling Order. Importantly, there were overall delays in the progress of this case, with some of those delays being caused by Great Lakes' decision to invoke the advice of counsel defense, and the corresponding need to retain new counsel and disclose additional privileged attorney-client documents. Although Great Lakes argues that Plaintiffs had all the information they needed to seek exemplary damages once they took the deposition of Mr. Davis in February 2024, Plaintiffs cannot be faulted for seeking additional information and documents and reviewing the information prior to filing the Motion to Amend. In addition, in the fall of 2024, the case was stayed pending a rescheduled mediation. *See* ECF No. 92. Overall, Shalz has shown appropriate diligence and good cause for late amendment.

On the issue of prejudice, Great Lakes has shown none. The Final Pretrial Conference has not occurred and there is no trial date. Great Lakes does not suggest that it would need any additional discovery to respond to Plaintiffs' claim for exemplary damages.

Third, Great Lakes argues that the proposed Amended Complaint, ECF No. 94-2, fails under the doctrine articulated in the *Iqbal* and *Twombly* cases because it does not contain any of the factual allegations that would justify an award of exemplary damages,

15

but merely contains conclusory assertions to the effect that "[b]ecause Great Lakes' conduct was willful and wanton, Shalz is also entitled to exemplary damages pursuant to Colorado Revised Statute § 13-21-102." *Id.* at ¶ 42. Great Lakes insists that because there are no non-conclusory factual allegations in the proposed amended complaint supporting an award of exemplary damages, the motion for leave to amend should be denied on futility grounds. ECF No. 102 at 9–10.

This objection is one of form over substance. The request for exemplary damages is a request for an additional form of **relief**. It is not a substantive claim that requires additional factual elements to prove. Under Colorado's statute, a plaintiff is not entitled to request exemplary damages without making the necessary prima facie showing. The Court is unaware of any requirement that the showing be made via factual allegations in the proposed amended complaint. Here, Plaintiffs have made the necessary showing via the motion to amend and the attached evidentiary material. Great Lakes has fair notice of the bases for the request for exemplary damages. If the Court were to deny amendment to allow exemplary damages on this basis, then Plaintiffs could simply cut and paste the factual paragraphs from the Motion to Amend into a new proposed amended complaint and overcome the objection. The Court is not in the business of requiring unnecessary busy-work.

## V. <u>CONCLUSION</u>

For the foregoing reasons, it is **ORDERED** that Plaintiffs' Motion for Leave to Amend to Seek Exemplary Damages, ECF No. 94, is **GRANTED**. Plaintiffs shall promptly file a clean, non-redlined version of the proposed Amended Complaint found at

ECF No. 94-2, which shall be accepted by the Clerk and deemed the operative pleading in the case.

Dated this 31st day of March, 2025.      BY THE COURT:

_N. Reid Neureiter_
N. Reid Neureiter
United States Magistrate Judge